IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-CR-443 |
| | ) | |
| OKECHUKWU DIMKPA, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant-inmate, Okechukwu Dimkpa, has filed a renewed motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A), asking the Court to reduce his sentence. He contends that he is at a heightened risk of serious illness from COVID-19 because of his age, ethnicity, and health and that the sentencing factors in 18 U.S.C. § 3553(a) support his release. His motion will be denied.

On September 11, 2019, Dr. Dimkpa pled guilty to six counts of distribution of oxycodone. Minute Entry 09/11/2019; Doc. 3. On December 16, 2019, Dr. Dimkpa was sentenced to a total of 46 months imprisonment followed by three years of supervised release. Minute Entry 12/16/2019; Doc. 15 at 2–3. The Court allowed him to self-report to prison on January 27, 2020. *Id.*

Dr. Dimkpa, proceeding *pro se*, filed a motion for compassionate release on April 27, 2020. Doc. 17. A few days later, the Court denied his motion without prejudice because he did not address whether he had complied with the statutory exhaustion

requirement in § 3582(c)(1)(A) and had not provided evidence to support his other claims. Doc. 18. Through counsel, he filed the instant motion for compassionate release on June 9, 2020, along with evidence he has complied with the statutory exhaustion requirement and extensive medical records. Doc. 20. The government responded promptly, *see* Docs. 23 and 24, the defendant filed a reply brief, Doc. 25, and the matter is now ripe for decision.

While courts do not have unfettered jurisdiction or discretion to modify criminal sentences after they become final, *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010), the compassionate release provision, 18 U.S.C. § 3582(c)(1)(A), does authorize courts to reduce an inmate's sentence under certain limited circumstances. Motions for compassionate release may be filed by the BoP or, if the defendant has asked the BoP to file such a motion and it has refused or failed to timely respond, by the defendant. 18 U.S.C. § 3582(c)(1)(A). Thus, for motions filed by the defendant, the defendant must ordinarily show that he has exhausted his administrative remedies. If he has, he must also show "extraordinary and compelling reasons" exist that warrant a sentence reduction, align with any applicable policy statements issued by the Sentencing Commission, and comport with statutory sentencing factors listed in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A).

1. **Exhaustion of Administrative Remedies**

Before a defendant is eligible to file a motion directly with the court, the defendant must make a written request to the warden asking the BoP to file a motion for compassionate release on his behalf. 18 U.S.C. § 3582(c)(1)(A). The defendant cannot

file a motion directly with the Court until at least thirty days pass from when the request to the warden is made or until he has exhausted any administrative appeals, whichever is earlier. *Id.*; *see United States v. Alam*, 960 F.3d 831, 835–36 (6th Cir. 2020); *United States v. Davis*, No. 1:17-CR-69, 2020 WL 3976970, at *2–3 (M.D.N.C. July 14, 2020).

Dr. Dimkpa filed a written request for compassionate release with the warden on April 20, 2020. Doc. 20-1 at 1–5.[1] The warden denied this request soon thereafter. Doc. 20-1 at 19; Doc. 24 at 9. On May 8, 2020, Dr. Dimkpa objected to the warden's denial in writing, sending a letter which he characterized as "a formal Administrative Remedy Request." Doc. 20-5 at 1. Dr. Dimkpa filed his renewed motion for compassionate release on June 9, 2020, Doc. 20, more than thirty days after he submitted his request to the warden in April. Thirty days have lapsed since Dr. Dimkpa's request to the warden, so he has satisfied the exhaustion requirement, which the government concedes, and the Court may now consider his motion. *See Alam*, 960 F.3d at 835–36; *Davis*, 2020 WL 3976970, at *2–3.

**2. Extraordinary and Compelling Reasons**

Dr. Dimkpa, a native of Nigeria, is 51 years old. Doc. 12 at 2. He had a prolonged bout of pneumonia early in 2019. Doc. 20 at 10–11; Doc. 20-3; Doc. 20-4. Dr. Dimkpa occasionally suffers from seasonal allergies, *see generally* Doc. 20-6, for which he occasionally needs over-the-counter allergy medication. Doc. 24 at 14; *see id.* at 17, 25, 43 (denying allergy symptoms). Dr. Dimkpa has a history of respiratory

---

[1] The request itself is dated April 16, Doc. 20-1 at 1, but Dr. Dimkpa uses the April 20 date. Doc. 17 at 2.

problems, but his medical records do not clearly support his assertion that he suffers from asthma. *See generally* Doc. 20-6.

The Center for Disease Control is currently of the view that the "risk for severe illness from COVID-19 increases with age," with adults "aged 85 years or older" as the age group at greatest risk. *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 17, 2020). It appears that Dr. Dimkpa is at a higher risk of severe illness than persons in their thirties or forties. *Id*.

While ethnic minority groups may be more affected by the coronavirus pandemic, current evidence suggests a correlation, not causation. *Health Equity Considerations & Racial & Ethnic Minority Groups*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited Aug. 17, 2020). The Court is not persuaded on this record that Dr. Dimkpa's ethnicity places him at a significantly heightened risk of severe illness or death if he contracts COVID-19.

The CDC distinguishes medical conditions that "might" lead to an increased risk for severe illness from COVID-19 from medical conditions that do carry an increased risk of severe illness from the virus. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 17, 2020). Moderate-to-severe asthma falls under the category of conditions that "might" increase risk of severe illness from COVID-19, not the category of conditions that does carry such a risk. *Id.* The evidence is not persuasive that Dr. Dimkpa suffers from moderate-to-severe asthma, and Dr.

Dimkpa has submitted no evidence that his other health conditions place him at higher risk of severe illness should he contract COVID-19.

Dr. Dimkpa's age, 51, is not by itself an extraordinary and compelling reason for a sentence reduction. As noted, the evidence is not persuasive that he has asthma, and even if he does have mild asthma symptoms from time to time, that alone is not an extraordinary and compelling reason for a sentence reduction, nor would his age, 51, and mild asthma together be an extraordinary and compelling reason.

While two staff members have tested positive for COVID-19 at FCI McDowell, the facility where Dr. Dimkpa resides, Doc. 23 at 3, they have since recovered. There is no evidence that any inmates have tested positive for this virus. *See COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 17, 2020).

Viewing the facts in their entirety and taken together, the Court does not find extraordinary and compelling reasons for release.

The COVID-19 pandemic is serious and has resulted in serious public health issues throughout the country and the world. Many people who get the disease do not suffer serious consequences and may not even feel sick. But others become quite ill, and the number of hospitalizations and deaths from the disease is staggering and increasing daily. No one can predict with any accuracy whether any particular person will suffer serious consequences if they contract the disease. The CDC does not definitively know what underlying conditions lead to severe illness, but rather is "learning more about COVID-19 every day" and adjusting its guidelines regularly. *People with Certain*

5

*Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 17, 2020).

It is undisputed that COVID-19 is highly contagious, and as the CDC recognizes, correctional and detention facilities face "unique challenges for control of [virus] transmission among incarcerated/detained persons, staff, and visitors." *Guidance for Correctional and Detention Facilities*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html#correctional-facilities (last visited August 17, 2020). The problems COVID-19 poses to correctional and detention facilities include the potential for the virus to spread rapidly within "congregate environments," regular staff movements, high prisoner turnover, geographic diversity of prisoners, low ability for inmates to exercise disease prevention measures, limited ability to socially distance, and various disincentives to self-report symptoms. *See id.*

But however contagious the disease is and however difficult it is to control in prisons, Congress has not authorized courts to reduce the sentences of everyone in prison who has a health condition that places them at potentially increased risk of complications. *See, e.g., United States v. Williams*, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) ("The existence of the present pandemic . . . is not tantamount to a 'get out of jail free' card."). Unless and until the Sentencing Commission adopts an applicable policy statement to the contrary, the Court agrees with the emerging consensus in district courts that the pandemic is relevant to the § 3582(c)(1)(A) decision but it does not provide a one-size-fits-all exception to the general rule that § 3582(c)(1)(A) is designed for

exceptional cases. While there is no exact formula, the likelihood of contracting the disease and experiencing severe illness from the disease must be quite high, not just possible.

There are cases where an inmate's age and particular health situation, the extent of the outbreak in the prison where the inmate is housed, and other factors justify compassionate release in light of the COVID-19 pandemic. *See, e.g.*, *United States v. Hamrick*, No. 1:19-CR-91, 2020 WL 4548308, at *4 (M.D.N.C. Aug. 6, 2020); *Poulios v. United States*, No. 2:09-CR-109, 2020 WL 1922775, at *3 (E.D. Va. Apr. 21, 2020); *United States v. Edwards*, No. 6:17-CR-00003, 2020 WL 1650406, at *3–5 (W.D. Va. Apr. 2, 2020). But the current record does not establish that this is such a case.

### 3. Sentencing Factors

Dr. Dimkpa's underlying offense was serious; he "was prescribing opioids to known 'drug seekers' with little or no physical examination and for cash." Doc. 2 at 1; Doc. 12 at ¶¶ 3, 12–18. One of the patients for whom he was prescribing opioids was an active cocaine and heroin user. *See* Doc. 2; Doc. 12 at ¶¶ 4, 7–11. Dr. Dimkpa continually supplied this patient with oxycodone despite the patient's recurring positive drug tests, and the patient died of an opiate overdose five days after receiving an oxycodone prescription from Dr. Dimkpa. Doc. 2 at 1–2; Doc. 12 at ¶¶ 4, 6–11, 20. Dr. Dimkpa admits that he received a "relatively light sentence" for his conduct, Doc. 20 at 24, and as the government points out, "[a] sentence of 46 months was necessary to put other medical professionals on notice that such prescribing patterns will not be tolerated." Doc. 23 at 18. Dr. Dimkpa received a sentence at the bottom of the guideline range, Doc.

7

15 at 2; Doc. 16 at 1, and he has only served about 5 months out of this 46-month sentence. *See* Doc. 15 at 2. The Court understands Dr. Dimkpa's concerns about COVID-19, but overall the § 3553(a) factors do not support a sentence reduction.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 20, is **DENIED**.

This the 17th day of August, 2020.

_____
UNITED STATES DISTRICT JUDGE